**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| JOYELLE CAMPBELL and CLAYTON BOYD, | ) ) ) | | |
| Plaintiffs, | ) ) | Civil Action No. 23-cv-99 | |
| v. | ) ) | U.S. District Judge Cathy Bissoon | |
| THE COUNTY OF MERCER, | ) ) | U.S. Magistrate Judge Kezia O. L. Taylor | |
| Defendant. | ) | ECF No. 36 | |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the motion for class certification be DENIED.[1]

**II. REPORT**

**A. Procedural History**

On May 11, 2023, Plaintiffs Joyelle Campbell and Clayton Boyd, filed their First Amended Complaint on behalf of individuals who were pre-arraignment detainees at the Mercer County Jail ("Jail"), charged with "minor crimes" who were subjected to visual strip searches. ECF No. 15. They alleged violations of their Fourth Amendment rights against unreasonable searches and

---

[1] We evaluate only Rule 23 class certification, contrary to Defendant's demand. It is perplexing that Defendant would expend considerable effort vigorously arguing that Plaintiffs failed to plead a constitutional violation pursuant to *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318 (2012), yet refrain from filing a dispositive motion. Accordingly, the merits of whether Plaintiff has stated a claim for a constitutional violation has not properly been placed before the Court and we will not address it. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."); *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 305 (3d Cir. 2016) ("a court should not address merits-related issues 'beyond what is necessary to determine preliminary whether certain elements will necessitate individual or common proof.'").

seizures and their Fourteenth Amendment due process rights by subjecting them to visual strip searches.[2] *Id.* Pending before the Court is Plaintiffs' Motion for Class Certification. ECF No. 36.

On June 28, 2023, the Court issued its first Case Management Order, ECF No. 23, with deadlines of September and October 2023, respectively, for completion of class certification and discovery; subsequently, the Court extended the deadlines three times. ECF Nos. 30, 32, 34. On August 2nd, Plaintiffs filed a Motion for Class Certification, ECF No. 36, accompanied by a Brief in Support of Motion for Class Certification, ECF No. 37. Plaintiffs moved, under Fed. R. Civ. P. 23 to certify this action as a class action. *Id.*

The proposed class that Plaintiffs seek to certify consists of:

> All persons who have been or will be placed into the custody of the Mercer County Jail after being charged with misdemeanors, summary offenses, violations of probation or parole, traffic infractions, civil commitments, or other minor crimes and were, or will be, subjected to strip searches prior to being arraigned and/or provided with a reasonable opportunity to post bail upon their entry into the Mercer County Jail pursuant to the policy, custom, and practice of Mercer County. This class period commences on January 19, 2021 and extends to the date on which The County of Mercer is enjoined from, or otherwise ceases, enforcing their unconstitutional policy, practice, and custom of conducting illegal strip searches of detainees prior to being arraigned and/or providing them with reasonable opportunity to post bail. Specifically excluded from the class is Defendant and any and all of its respective affiliates, legal representatives, heirs, successors, employees, or assignees.

ECF No. 37 at 16.

### B. Relevant Factual Allegations

---

[2] The Court notes that Plaintiffs omitted any substantive discussion of a Fourteenth Amendment due process claim, as the Amended Complaint only makes a passing reference to the Fourteenth Amendment in paragraph 22. *See* ECF No. 15 ¶ 22. Additionally, while Plaintiffs have not explicitly stated that they are asserting a *Monell* claim against Defendant, they make substantial references to deficiencies in Defendant's policy, custom and practice and invoke 42 U.S.C. § 1983. *See id*. at ¶¶ 11, 16, 22, 28, 29, 30 *passim*.

Because the parties are familiar with the general background of this case, the Court will summarize only those most pertinent facts relevant to this motion for class certification. The named Plaintiffs are Pennsylvania residents who were arrested on non-felony charges and placed in the Jail in 2021. ECF No. 15 ¶¶ 7, 8. The Jail has a policy or practice of strip searching all who enter, whatever the nature of the charged crime or reasonable suspicion regarding weapons or other contraband. *Id.* ¶ 28. The "strip search" includes the Jail's policy or practice of visually inspecting body cavities, without consideration of individual circumstances or the nature of the crime charged. *Id.* ¶ 28, 29. Each member of the class, including the named Plaintiffs, were subject to this strip search upon entry to the Jail, *id.* ¶ 34, and as a result, "ha[s] suffered or will suffer psychological pain, humiliation, suffering, and mental anguish." *Id.* ¶ 35.

In January 2021, Plaintiff Campbell was admitted to the Jail for disorderly conduct, *id.* ¶ 7, was strip searched, *id.* ¶ 5, was non-compliant at times, *id.* ¶ 43, was kept in a holding cell, and was not assigned to the general jail population before release. *Id.* ¶¶ 49, 51. Plaintiff Campbell's strip-search form indicates that she was intoxicated and combative. ECF No. 37-4. In September 2021, Plaintiff Boyd was admitted to the Jail pursuant to an outstanding warrant for indirect civil contempt, ECF No. 15 ¶¶ 8, 55, brought about because he had failed to pay costs and fines after a 2018 driving under the influence guilty plea. *Id.* ¶ 56. He was strip searched, *id.* ¶ 62, full-body scanned, *id.* ¶ 64, and was not assigned to the general jail population before release. *Id.* ¶ 67. Upon admission, Plaintiff Boyd reported to staff that he would be suffering from opioid withdrawal while at the Jail, ECF No. 37-3 at 22, with his strip search form indicating "reports suboxone use and will go through withdrawal." ECF No. 37-5.

### C. Legal Standards

A movant seeking class certification pursuant to Federal Rule of Civil Procedure 23 must demonstrate by a preponderance of the evidence these factors: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the named plaintiffs must fairly and adequately protect the interests of the class (adequacy). *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 190 (3d Cir. 2020) (citations omitted). The burden is borne by Plaintiffs to "satisfy Rule 23(a)'s … prerequisites of numerosity, commonality, typicality, and adequacy of representation … and . . . also establish that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amgen*, 568 U.S. at 460 (2013). *See also In re Lamictal* 957 F.3d *at* 190. The Court must engage in a "rigorous analysis" and find that "each Rule 23 requirement is met." *Ferreras v. Am. Airlines, Inc.*, 2019 WL 7161214, at *3 (3d Cir. Dec. 24, 2019) (internal quotations and citations omitted). Plaintiffs' "[f]actual determinations supporting Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008), *as amended* (2009). Along with the factors promulgated by the Federal Rules of Civil Procedure, the Third Circuit has identified another element to the class certification process: ascertainability. The proposed class must be "readily and reasonably ascertainable by objective criteria" prior to engaging in analysis of the specific burdens under Rule 23. *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 132 (3d Cir. 2023). Each factor will be addressed in turn.

**D. Analysis**

(1) Ascertainability

Ascertainability, identified by the Third Circuit as an implicit requirement for class certification, requires a two-fold showing from the movant that "there [is] a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition," *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013), and the class can be defined "with reference to objective criteria." *Id.* If a proposed class definition "involves an ultimate issue of liability" which forces the court to "conduct mini-hearings" in order to determine who belongs in the class and who does not, it renders the class action form "administratively infeasible and therefore unascertainable." *Id. See also Kondratik v. Beneficial Consumer Disc. Co.*, 2006 WL 305399, *10 (E.D. Pa.2006) (where mini-hearings on the merits are required to determine class membership, the class definition did not meet the ascertainability element). The "ascertainability inquiry ensures that a proposed class will actually function as a class." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015), as amended (Apr. 28, 2015). This analysis does not mean that the named plaintiffs need to "identify all class members at class certification – instead, [named plaintiffs] need only show that 'class members *can* be identified.'" *Id.* at 163 (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013)) (emphasis in original). While the Third Circuit was not imposing a "records requirement" to show ascertainability, a party cannot merely provide assurances to the district court that it will later meet Rule 23's requirements. *Byrd*, 784 F.3d at 164. The class must be ascertainable in the here and now, the method must be spelled out, and if there is any doubt, class certification is denied:

> [C]lass [members must] be 'currently and readily ascertainable based on objective criteria.' "*Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020). To satisfy that requirement, "[p]laintiffs must show that '(1) the class is defined with reference to objective

>criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* at 469-70 []. A plaintiff must propose a classification method with evidentiary support to meet the ascertainability requirement. . . . If a district court harbors uncertainty about whether the plaintiff has satisfied the requirements of Rule 23, class certification should be denied.

*In re Niaspan Antitrust Litig.*, 67 F.4th 118, 129–30 (3d Cir. 2023) (*some internal citations omitted*).

With this legal framework, Plaintiffs have not met their burden of proof that the putative class is ascertainable. Plaintiffs argue in their opening brief that the class is ascertainable because "objective criteria derived from Defendant's own records can be used to ascertain class membership." ECF No. 37 at 23. Plaintiff's own method was to take strip search data from three random months, representing about 450 pretrial detainees. From this, Plaintiffs assert that:

>class certification discovery has revealed at least one-hundred (100) individuals, other than the named Plaintiffs, have been (1) detained at Mercer County Jail for minor crimes; (2) strip searched as a routine part of the intake and booking process; (3) underwent the strip search before they were arraigned or had reasonable opportunity to post bail; (4) were without reasonable suspicion to conduct a strip search; and (5) were not transferred to a general population housing unit.

*Id*. at 20. These five criteria do not match the description of the class which makes no mention of either "reasonable suspicion" or transfer to the general population for housing. *Id*. at 16. In any event, Plaintiffs do not tell the Court how they arrived at the 100 number, other than it being "revealed" by discovery. They have posited, reasonably, that the number of pretrial detainees over the total 42-month period would be substantially greater than 100. They add that "based on data from the [strip search forms] available to Plaintiffs, at the very least 138 strip-search detainees qualify as "pre-arraignment." Next, turning to "reasonable suspicion," they admit that the proper section of the vast majority of the forms had been left blank, and next, eliminate those individuals

who were detained for alleged felonies. While including an entire category not within the class definition, and without "showing the math," Plaintiffs announce that they have "calculated that at least 112 individuals were strip searched without articulated reasonable suspicion." *Id.* at 17. In an effort to buttress the ascertainability evidence in their opening brief, ECF No. 44 at 2, Plaintiffs attach to their reply brief forty-seven (47) additional[3] sample strip search forms, ECF No. 44 at 8, ECF No. 44 – 1, and provide a narrative tour of the form, ECF No. 44 at 6, 7, 8.[4] Even so, the additional strip search forms reveal nothing new and do not illuminate the "administratively feasible mechanism" that both parties recognize the Court requires. *In re Niaspan Antitrust Litig.*, *supra.*

Plaintiffs have offered no reliable method for identifying potential class members who meet their own class definition and have not even attempted it themselves. They have pointed out ways in which the Jail's record-keeping is flawed and have identified no way to screen out possible false or erroneous data. Accordingly, because of the lack of evidence put forth by Plaintiffs demonstrating how the class members can be ascertained through reliable and administratively feasible methods, Plaintiffs have failed to meet their burden and it is respectfully recommended that their motion for class certification be denied on these grounds.

---

[3] Additional to the strip search forms of Campbell and Boyd which were provided with the main brief, ECF Nos. 37-4, 37-5.

[4] While the need to provide sufficient ascertainably evidence in the opening brief was surely foreseeable to Plaintiffs, at least one court in our Circuit has approved such factual reinforcement, *see Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:06-CV-1105, 2015 WL 11604481, at *1 (M.D. Pa. Mar. 9, 2015) (a moving party may attach evidentiary documentation to a reply brief in response to arguments raised in an opposition brief). Plaintiffs describe that line B contains pending charges, line C, circumstances of arrest, and that sometimes, probation or parole status is listed. Admission and discharge times are in the top left of the first page and the bottom of the form, respectively, and from these times, Plaintiff asserts that the Court can determine which inmates were not arraigned or did not have a reasonable likelihood of being arraigned. ECF No. 44 at 6 – 8.

(2) Numerosity

Even if Plaintiffs had met their burden of showing ascertainability, they have failed to show by a preponderance of the evidence that numerosity has been met. Under Rule 23, numerosity is satisfied when "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement does not mean that joinder is impossible, but "refers rather to the difficulties of achieving joinder." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016). While there is no minimum number of plaintiffs that makes joinder impracticable, "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).

Plaintiffs argue that numerosity is met because during the Class Period, Plaintiffs have identified at least one-hundred (100) individuals who were (1) detained at the Jail for minor crimes; (2) strip searched as a routine part of the intake and booking process; (3) underwent the strip search before they were arraigned or had reasonable opportunity to post bail; (4) were without reasonable suspicion to conduct a strip search; and (5) were not transferred to a general population housing. The court must make a factual determination based on the preponderance of the evidence that Rule 23's requirements have been met. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 307. While this does not require Plaintiffs "to offer direct evidence of the exact number and identities of the class members[,]" if no direct evidence exists, Plaintiffs "must show sufficient circumstantial evidence specific to the [categories] actually covered by the class definition to allow a district court to make a factual finding. Only then may the court rely on 'common sense' to forgo precise calculations and exact numbers." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596-7 (3d Cir. 2012) (quoting *Prudential Ins. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 468, 510 (D.N.J.1997), *aff'd*, 148 F.3d 283 (3d Cir.1998)).

Plaintiffs have offered no direct evidence that they ever calculated, even roughly, the number of individuals covered by the class definition. As already noted, the criteria Plaintiffs used to identify "at least one-hundred (100) individuals" do not match the description of the class. That flaw also renders Plaintiffs unable to provide circumstantial evidence that numerosity is met. It would be impossible for the Court, here, to rely on "common sense" to make a factual finding. We decline to speculate about whether joinder is impracticable and conclude that numerosity has not been met based on the record evidence.

(3) Commonality and Predominance

Even if ascertainability and numerosity had been met, Plaintiffs have failed to meet their burden of showing by a preponderance of the evidence that common issues of law or fact exist and that they predominate. The commonality element for class certification requires that there be common issues of fact or law capable of class-wide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). When a putative class seeks certification under Rule 23(b)(3), it is appropriate to consider the predominance element along with the commonality element. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted). "Rule 23 does not require the absence of all variations in a defendant's conduct or the elimination of all individual circumstances. Rather, predominance is satisfied if common issues predominate." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 489 (3d Cir. 2015). Predominance is met where a putative class can prove "the essential elements of the claims" through "evidence that is common to the class rather than individual to its members." *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (citations omitted).

Plaintiffs submit that commonality is met here because each proposed class member asserts

the same claim for violation of the Fourth Amendment and seeks declaratory and injunctive relief, based on the same alleged misconduct, the blanket strip search, against the same Defendant. And they claim that individualized issues will not predominate because of those same common core legal and factual issues. Plaintiffs state that central legal issue as follows:

> Does [the Jail's] practice of strip searching every detainee that will be held at the [Jail] irrespective of reasonable suspicion, pre-arraignment status, whether the detainee has been provided with a reasonable opportunity to post bail or the fact that Defendant's holding cells do not qualify as a general prison population, violate the Fourth Amendment's prohibition against unreasonable searches?[5]

ECF No. 37 at 29. Defendant counters that this fails, first, because there is no legitimate claim for a Fourth Amendment violation, but we can sidestep that merits issue. Second, Defendant asserts that the situations of different Plaintiffs will be unique and that, indeed, this is typified by Campbell and Boyd, whose circumstances were disparate, aptly demonstrating the need for individual evaluation. As to predominance, also, Defendant counters that each potential class member has individual circumstances. As Defendant puts it:

> Looking ahead to the class that is suggested by Plaintiffs, every member would have a highly individualized health history, criminal arrest history, criminal or court reason for incarceration, incarceration history, sex, potential for alcohol and drug abuse and a myriad of other factors some of all of which factor into whether corrections officers at intake believe they need to conduct a strip search.

ECF No. 41 at 32. We agree. The court would be forced to apply an individualized analysis to each Plaintiffs' claims resulting in a "proliferation of disparate legal and factual issues" which could compound exponentially. *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996), *aff'd sub nom. Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997). Plaintiffs have not even

---

[5] This question and the proposed class description appear to be inconsistent.

sought to explain how to navigate the class members' individual variables and have not met their burden to prove that there are common issues of law and that those predominate over individualized claims.

(4) Typicality

Even if Plaintiffs had met their burden of showing ascertainability, numerosity, commonality, and predominance, they have failed to show by a preponderance of the evidence that typicality has been met. To determine whether typicality is met, the Court assesses three factors:

> (1) The claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Dieter v. Aldi, Inc.,* No. CV 2:18-00846, 2018 WL 6191586, at *8 (W.D. Pa. Nov. 28, 2018) (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009)). Though close to the concept of commonality, typicality evaluates the sufficiency of the named plaintiffs and commonality evaluates the sufficiency of the class. *Dieter v. Aldi, Inc.*, No. CV 2:18-00846, 2018 WL 6191586, at *8 (W.D. Pa. Nov. 28, 2018).

In support of their claim that typicality is satisfied, Plaintiffs summarily argue that their "claims here arise out of the same practice and course or conduct of Defendant and are based on the same legal theories as those of the proposed Class members. Plaintiffs. . . and each member of the proposed class . . . were all subjected to an unlawful and unconstitutional strip search" and seek the same remedies. ECF No. 37 at 26. Plaintiffs offer no evidence to support their assertions. Defendant argues that because individual circumstances give rise to Campbell and Boyd's claims, their situation is different from the claims of the putative class. ECF No. 41 at 32. It argues:

> [T]he purportedly typical claims of the proposed class arise out of allegations these pre-trial detainees were similarly subjected to invasive searches without reasonable suspicion and without legal consideration of their housing status and the nature of their criminal charges. Although Plaintiffs individually can provide testimony at least alleging the invasive searches they were subjected to were not based on reasonable suspicion, they cannot speak to the facts and circumstances underlying other pre-trial detainee's searches as presented in the prior argument above. . . . Plaintiffs Campbell and Boyd individually argue they and other proposed class members were subjected to strip searches as pre-trial detainees without reasonable suspicion . . . and without consideration of their housing status and the nature of their underlying arresting offenses.
>
> ECF No. 41 at 32 – 33.  (1) The claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Id*.  We agree with Defendant that to the extent reasonable suspicion, the nature of the criminal allegations, and their housing status are part of the unconstitutionality claim, Plaintiffs have offered no proof that Campbell and Boyd are similarly situated to the rest of the putative class.  In other words, to the extent that the central legal issue, *supra*, at 10, states a valid claim, the factual circumstances of Campbell and Boyd are different from those of the class such that resolution of the named Plaintiffs' claim would not necessarily dispose of the claim as a class.  Because Plaintiffs have failed to meet the first prong of the typicality test, Plaintiffs have not met the typicality requirement.

    (5) Adequacy

The adequacy factor requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In addition, it "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Beck v. Maximus Inc.*, 457

F.3d 291, 296 (3d Cir.2006) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, (1997)).  The Third Circuit has held that "[a]dequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007).[6]  Plaintiffs contend that they have no interests antagonistic to the class and that "the central issues in this case [blanket strip searching] are common to Plaintiffs and other Class members.  [All] have a strong interest in proving the Defendant's actions, establishing its unlawfulness, and obtaining redress.  As Plaintiffs prove their own claims, they also will be proving the claims of absent Class members. . . . There is no conflict between Plaintiffs and the proposed Class members. . . ."  ECF No. 37 at 27.  Defendant challenges adequacy because Campbell and Boyd are not "similarly situated to and do not adequately represent the proposed class . . . since their search[es] were based on reasonable articulated suspicion."[7]  ECF No. 41 at 34.

Defendant thus repeats its commonality and typicality argument but does little to support it in this context beyond merely asserting that these differences undercut the ability of the class representatives to represent the class.  Without more from Defendant, "[i]t is impossible to glean . . . the extent to which plaintiff'' individual claim may or may not conflict with other putative class members and whether that conflict will prevent plaintiff from adequately representing the class." *Dieter v. Aldi, Inc.*, No. CV 2:18-00846, 2018 WL 6191586, at *10 (W.D. Pa. Nov. 28, 2018); *see*

---

[6] Defendants have not challenged the ability of Plaintiffs' counsel to adequately represent the class and we will not review it.

[7] As to Campbell, elements of her strip search form suggest that the Jail might have had reasonable suspicion, though sections I and J, where reasonable suspicion was to be recorded, were blank. ECF No. 37-4.  As to Boyd, the Jail recorded its reasonable suspicion; section J records Boyd report of substance use and withdrawal.  ECF 37-8.

*also Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 41 (D.D.C. 2017) ("[C]onflicts will not defeat the adequacy requirement if they are speculative or hypothetical."). A class representative need not have claims identical to other members, as long as Plaintiffs have no conflicts with, or interests antagonistic to, the class. We find that the named class members are otherwise adequate representatives of the class. But Plaintiffs have failed to satisfy the other required elements of Rule 23.

### III.    CONCLUSION

Based on the foregoing, it is respectfully recommended that Plaintiffs' motion for class certification be denied because Plaintiffs have failed to prove by a preponderance of the evidence that the elements of Rule 23 are satisfied.

In accordance with the Federal Magistrate Judge's Act, 28 U.S.C. §636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: March 3, 2025                                                          Respectfully submitted,

                                                                                                               s/ Kezia O. L. Taylor
                                                                                                               Kezia O. L. Taylor
                                                                                                               United States Magistrate Judge